USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__05/17/17___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
JESSICA TORRES, as Administrator of                          :
the Estate of Edwin Junior Carrington,                       :
                                         Plaintiff,          :       09 Civ. 9357 (LGS)
                                                             :
                         -against-                           :       **OPINION AND ORDER**
                                                             :
THE CITY OF NEW YORK,                                        :
                                         Defendant.          :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Jessica Torres, in her capacity as Administrator of the Estate of Edwin Junior Carrington, brings this action against Defendant City of New York (the "City"). Following an earlier motion for summary judgment, Plaintiff's federal claim and state false imprisonment claim were dismissed, leaving state claims for negligence and wrongful death. Defendant City now files a supplemental motion for summary judgment claiming that it is immune from liability on Plaintiff's remaining claims. For the following reasons, Defendant's motion is denied.

## I. BACKGROUND

      Familiarity with the facts and procedural history of this case is assumed. *See Torres v. City of New York*, No. 09 Civ. 9357, 2016 WL 3748492 (S.D.N.Y. July 11, 2016). In support of its supplemental motion for summary judgment, Defendant City provides the deposition transcript of Deputy Warden Emilio Pennes, who testified that, based on an order from the Warden, the C-Block of Queens Central Booking ("QCB") is opened only when more than 100 prisoners are in custody, unless the officers on duty use their discretion to give the prisoners more space.

## II. STANDARD

      Summary judgment is appropriate where the record before the court establishes that

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *see also, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016). All evidence must be construed, and all reasonable inferences must be drawn, in favor of the non-moving party. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted); *accord Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016). Instead, a party asserting that a fact is genuinely disputed "must support the assertion" by citing to the record or showing that "the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

### III.   DISCUSSION

The City argues that Plaintiff's remaining claims should be dismissed because (1) it did not owe a special duty to Carrington and (2) it is entitled to governmental immunity on its decision not to open additional holding cells.

#### A.   Applicability of Governmental Immunity to Claims Against Municipalities

When a plaintiff asserts a negligence claim against a municipality for which the

municipality seeks immunity, the court undertakes a multistep analysis to determine whether dismissal of the claim is appropriate. First, the court must decide whether the municipality or relevant municipal entity was acting in a proprietary or governmental capacity at the time the claim arose. A municipality is engaged in a proprietary capacity when its activities "essentially substitute for or supplement traditionally private enterprises," and is engaged in a governmental capacity when it acts "for the protection and safety of the public pursuant to [its] general police powers." *Applewhite v. Accuhealth, Inc.*, 995 N.E.2d 131, 134 (N.Y. 2013). If the court determines that the municipality acted in a proprietary capacity, the municipality is not entitled to immunity, and the claim may move forward. *See id.*

If, however, the court determines that the municipality was acting in a governmental capacity, the municipality may be entitled to dismissal of the claim based on either of "two separate but well-established grounds" for dismissal of a tort claim: (1) that it did not owe the plaintiff a special duty or (2) the "governmental function immunity defense." *Valdez v. City of New York*, 960 N.E.2d 356, 361 (N.Y. 2011). The New York Court of Appeals directs courts to undertake this analysis by determining the "extent to which the municipality owed a 'special duty' to the injured party," *Applewhite*, 995 N.E.2d at 135, and then, if necessary, addressing whether the municipality "can rely upon the defense of governmental immunity." *Metz v. State*, 982 N.E.2d 76, 79 (N.Y. 2012).

A municipality can owe a special duty to an injured party if "(1) the [injured party] belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the [injured party] beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition." *Applewhite*, 995 N.E.2d at 135; *accord Velez v City of New York*, 730 F.3d 128, 135 n.10 (2d Cir. 2013) (applying

New York law). The burden of establishing the existence of a special duty lies with the claimant. *See Metz*, 982 N.E.2d at 79. "As *Applewhite* holds, whether a special relationship exists is ordinarily a jury question." *Velez*, 730 F.3d at 135 (citing *Applewhite*, 995 N.E.2d at 143–44).

In situations where a plaintiff claims the existence of a special duty because the municipality voluntarily assumed a "special relationship" with the injured party beyond the duty owed to the general public, the plaintiff must establish the presence of four elements: (1) "an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured," (2) "knowledge on the part of the municipality's agents that inaction could lead to harm," (3) "some form of direct contact between the municipality's agents and the injured party" and (4) "that party's justifiable reliance on the municipality's affirmative undertaking." *Applewhite*, 995 N.E.2d at 138. It is well established that the government undertakes a duty of care to prisoners in its custody with regard to foreseeable risks of harm. *See, e.g.*, *Sanchez v. State*, 784 N.E.2d 675, 678 (N.Y. 2002) ("Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard inmates . . . [from] risks of harm that are reasonably foreseeable."); *accord Villar v. Howard*, 64 N.E.3d 280, 283 (N.Y. 2016); *see also Littlejohn v. State*, 630 N.Y.S.2d 407, 408 (3rd Dep't 1995) (state "has a duty to use reasonable care to protect its inmates from foreseeable risks of harm").

Once a plaintiff establishes the existence of a special duty, the court then addresses any affirmative defenses raised by the state, such as governmental immunity. *See Tara N.P. v W. Suffolk Bd. of Co-op. Educ. Servs.*, 71 N.E.3d 950, 955 (N.Y. 2017); *Metz*, 982 N.E.2d at 79. Although the State of New York "long ago waived sovereign immunity on behalf of itself and its

municipal subdivisions, the common-law doctrine of governmental immunity continues to shield public entities from liability for discretionary actions taken during the performance of governmental functions." *Valdez v. City of New York*, 960 N.E.2d 356, 361 (N.Y. 2011). While discretionary actions "may not be a basis for liability," the municipality may be liable for negligent ministerial actions if they violate the special duty discussed above. *Id.*; *see also In re World Trade Ctr. Bombing Litig.*, 957 N.E.2d 733, 756 (N.Y. 2011). "[D]iscretionary . . . acts involve the exercise of reasoned judgment which could typically produce different acceptable results, whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result." *Lauer v. City of New York*, 733 N.E.2d 184, 192 (N.Y. 2000).

New York courts have consistently held that actions that initially appear discretionary are functionally ministerial if the municipality (or officer acting as an agent of the municipality) lacks authority to make the decision in question. In *Allen v. Town of Amherst*, 740 N.Y.S.2d 904 (4th Dep't 2002), the Fourth Department reversed the trial court and found that plaintiffs had raised a triable issue of fact as to whether a police officer acted with reckless disregard in responding to a dispatch. *Id.* at 905. Although the decision of how to respond to a call for police activity is generally within an officer's discretion, the court held that the officer's actions were subject to the rules of the Town's police department, which raised a question of fact precluding summary judgment. *See id.*

Likewise, New York appellate courts have found that municipalities are not entitled to immunity for decisions made by police officers that fall outside the realm of acceptable police practice. *See, e.g.*, *Lubecki v. City of New York*, 758 N.Y.S.2d 610, 617–18 (1st Dep't 2003) (municipality not entitled to immunity where officers' conduct was both outside the bounds of acceptable police practice and in violation of patrol guide). In *Lubecki*, the First Department

found that police authority was cabined by both acceptable practice and the relevant patrol guide such that the officers were performing an essentially ministerial function in responding to a hostage situation, even though the patrol guide arguably permitted officers to decide whether the discharge of a weapon would unnecessarily endanger the public. *See id.* at 615, 617–18.

The fact that a government official made a decision does not alone make that decision a discretionary act. *See Valdez*, 960 N.E.2d at 364 ("We know of no decision of this Court holding that police action (or inaction . . .) is always deemed to be discretionary under the discretionary/ministerial duty analysis."). Courts therefore must carefully examine whether decisions by municipalities or their agents are discretionary or ministerial in nature.

### B. Evidence of a Special Duty to Carrington

It is undisputed that the City was acting in a governmental capacity in its management of QCB. *See, e.g.*, *Applewhite*, 995 N.E.2d at 134 (providing examples of classic government functions, including oversight of confined individuals). As to whether the City owed a special duty to Carrington, Plaintiff has adduced sufficient evidence to raise a question of fact on that issue. Plaintiff meets all four elements of the test for establishing a special relationship with the City.

First, as noted above, the City owes a duty to prisoners such as Carrington, who by the nature of their confinement, are reliant on the City for their basic needs. *See, e.g*, *Sanchez*, 784 N.E.2d at 678. Second, Plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that QCB officials were aware of both overcrowding and unsanitary conditions in Carrington's cell, from which the officials could infer a risk of harm. *See Torres*, 2016 WL 3748492, at *4 (discussing evidence of visibly crowded and unsanitary conditions). Third, Plaintiff has adduced sufficient evidence for a reasonable jury to find that QCB officials

6

interacted with Carrington when placing him in the overcrowded cell and determining when to move him from that cell. *See id.* at *2. Fourth, by virtue of the City's obligations to him, Carrington justifiably relied upon the City's duty to keep him safe while he was confined. Summary judgment is therefore inappropriate on the question of the City's special duty to Carrington.[1] *See Applewhite*, 995 N.E.2d at 133, 139.

The City argues that Plaintiff cannot show that the City owed a special duty to Carrington because any duty owed to Carrington was likewise owed to any other arrestee. However, the fact that the City owes a duty to all prisoners in its custody does not change the fact that the City owed Carrington a duty that went beyond the duty owed to the general public. *See Sanchez*, 784 N.E.2d at 678.

The City further argues that it was not on notice that inaction could harm Carrington, particularly given that the City was unaware that anyone else in QCB custody had meningitis. That argument is for the jury. As detailed in the prior summary judgment decision, Plaintiff has presented evidence such that a reasonable fact finder could conclude that the City knew or should have known that the conditions of Carrington's confinement created the risk of his contracting a serious illness such as meningitis. *See Torres*, 2016 WL 3748492, at *4. That evidence is sufficient to defeat the present summary judgment motion.

Lastly, the City argues that it did not assume a special duty to Carrington because there is no evidence that Carrington relied on any promise made by corrections personnel such that he was induced to "forego other available avenues of protection." *Clark v. Town of Ticonderoga*,

---

[1] Implicit in the prior summary judgment decision upholding Plaintiff's state negligence and wrongful death claims was the assumption by the parties and the Court that the City owed Carrington a special duty of care. *See Applewhite*, 995 N.E.2d at 135 ("It is the plaintiff's obligation to prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself.").

7

737 N.Y.S.2d 412, 415 (3rd Dep't 2002); *accord Cuffy v. City of New York*, 505 N.E.2d 937, 940 (N.Y. 1987). However, by virtue of his status as a detainee, Carrington had no other available avenues of protection. He was entirely reliant on the City's abiding by its duty to keep him safe. *See Sanchez*, 784 N.E.2d at 678. Plaintiff has thus adduced evidence sufficient to create an issue of fact as to whether the City owed a special duty to Carrington. Defendant is not entitled to summary judgment on this point.

### C. Management of Queens Central Booking Could Have Been Ministerial

As Plaintiff has adduced evidence sufficient for a jury to find that the City owed a special duty to Carrington, the next issue is whether placing Carrington in an overcrowded and unsanitary cell constituted a discretionary act or a ministerial one. Plaintiff has adduced evidence sufficient for a reasonable jury to conclude that the City's conduct was unconstitutional, and therefore ministerial, thereby precluding governmental immunity.

While City officials have some discretion to determine how best to manage QCB, City officials lack discretion to violate the governing rules set forth by the United States Constitution. *See Lauer*, 733 N.E.2d at 187 (conduct "requiring adherence to a governing rule" is ministerial rather than discretionary); *cf. Myers & Myers, Inc. v. USPS*, 527 F.2d 1252, 1261 (2d Cir. 1975) ("It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority."); *Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir. 2016) ("A constitutional limit on governmental power . . . circumscribes the government's authority even on decisions that otherwise would fall within its lawful discretion.").

As Carrington was a pretrial detainee, the applicable constitutional standard arises under the Due Process Clause of the Fourteenth Amendment, and not the Cruel and Unusual

8

Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Under this standard, unconstitutional conditions of confinement exist when the challenged conditions are sufficiently serious to constitute an objective deprivation of the right to due process -- i.e., when conditions "pose an unreasonable risk of serious damage to [the detainee's] health." *Id*. at 30. Prisoners, including pretrial detainees, "may not be deprived of their basic human needs . . . and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health." *Id.* The Second Circuit has expressly condemned conditions similar to those alleged by Plaintiff in this case. *Cf, e.g.*, *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment [under the Eighth Amendment] for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end."). "Unsanitary conditions, especially when coupled with other mutually enforcing conditions . . . can rise to the level of an objective deprivation." *Darnell*, 849 F.3d at 30. "An overcrowded cell, for example, may exacerbate the effect of unsanitary conditions." *Id.* at 32. Unsanitary conditions of confinement should be assessed "with reference to their severity and duration, not the detainee's resulting injury," *id*. at 30, "although 'the seriousness of the harms suffered . . . may shed light on the severity of an exposure.'" *Id.* at 31 (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 58 (2d Cir. 2015)). The inquiry is fact intensive and not "subject to a bright-line durational or severity threshold." *Id*. at 31–32.

To demonstrate unconstitutional conditions of confinement under the Fourteenth Amendment, Plaintiff must also show that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have

9

known, that the condition posed an excessive risk to health or safety." *Id.* at 35 (adopting objective standard of deliberate indifference for Fourteenth Amendment claims, rather than the subjective standard applicable to Eighth Amendment claims).

Here, Plaintiff has adduced sufficient evidence to raise a genuine issue of fact as to the constitutionality of the conditions of Carrington's confinement at QCB sufficient to defeat summary judgment on the issue of governmental immunity. *See Torres*, 2016 WL 3748492, at *2 (citing testimony that Carrington was held in overcrowded and unsanitary cells "such that inmates were exposed, in close quarters, to bodily fluids and other waste"). If the jury finds that Plaintiff has proved unconstitutional confinement, and as the City has no discretion to perpetuate unconstitutional wrongs, the City's claim to governmental immunity would be rejected. *See Cangemi v United States*, 12 Civ. 3989, 2017 WL 1274060, at *9 (E.D.N.Y. Mar. 31, 2017) (applying New York law and rejecting the Town's municipal immunity argument for summary judgment, because municipalities have no immunity for creating a public nuisance, and Plaintiffs presented genuine issues of material fact as to the Town's role in creating nuisances).

In short, if the jury finds that the City owed Carrington no special duty, then the City has no liability to Plaintiff. If the jury finds that the City did owe Carrington a special duty, but that the City's conduct did not rise to the level of a constitutional violation, then the City is entitled to governmental immunity as the City's conduct was discretionary. If the jury finds that the City did owe Carrington a special duty and that the City's conduct was unconstitutional, then the affirmative defense of governmental immunity is unavailable as a matter of law as the City's conduct was ministerial.

### D. Defendant's Request to Bar the Introduction of Overcrowding Evidence

In its reply in support of its supplemental motion for summary judgment, the City moves

to bar Plaintiff from introducing evidence at trial regarding (1) overcrowded conditions caused by placing too many people in a cell and (2) the likelihood that such conditions contributed to the transmission of meningitis. Defendant argues that such exclusion is appropriate because the "City is still entitled to governmental immunity for its decisions regarding how many people to put in each cell, and whether or not to open additional cells." As the question of overcrowding bears directly on the applicability of governmental immunity in this case, Defendant's motion is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's supplemental motion for summary judgment is DENIED.

Dated: May 17, 2017
       New York, New York

                                     LORNA G. SCHOFIELD
                                UNITED STATES DISTRICT JUDGE